UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, )
       Plaintiff, )
        )
v. ) Civil Action No. 05 11015 JLT
        )
$12,571.00 in U.S. Currency, )   MAGISTRATE JUDGE Alexander
        )
       Defendant. )

## COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to Title 21, United States Code, Section 881(a)(6), alleges that:

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355. Venue is appropriate pursuant to 28 U.S.C. § 1395.

2. The *in rem* defendant consists of $12,571.00 in U.S. Currency seized from Nestor Adrian Cardona Suarez on September 28, 2004 in Revere, Massachusetts (the "Defendant Currency").

3. The Defendant Currency is now and, during the pendency of this action, will be within the jurisdiction of this Court.

4. As detailed in the attached Affidavit of United States Drug Enforcement Administration Task Force Agent James Picardi, (the "Picardi Affidavit"), which is incorporated herein by reference, the United States has probable cause to believe that the Defendant Currency constitutes moneys, negotiable instruments, securities, or other things of value furnished or

intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an exchange, and/or moneys, negotiable instruments and securities used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846, and therefore is subject to seizure and forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) and (b).

WHEREFORE, the United States of America prays:

1. that a Warrant and Monition, in the form submitted, issue to the United States Marshal for the District of Massachusetts, commanding him to take custody of the Defendant Currency, and to give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2. that judgment of forfeiture be decreed against the Defendant Currency;

3. that thereafter the Defendant Currency be disposed of according to law; and

4. for costs and all other relief to which the United States may be entitled.

Respectfully submitted,

MICHAEL J. SULLIVAN,
United States Attorney

By: /s/ Kristina E. Barclay
Kristina E. Barclay
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3100

Dated: May 17, 2005

2

VERIFICATION

I, James Picardi, Task Force Agent with the United States Drug Enforcement Administration, state that I have read the foregoing Verified Complaint for Forfeiture in Rem, and that the contents thereof are true to the best of my knowledge, information, and belief.

Dated: May 13, 2005

James Picardi
Task Force Agent
United States Drug Enforcement Administration


COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                                    Boston

Then personally appeared before me the above-named James Picardi, Task Force Agent, United States Drug Enforcement Administration, who acknowledged the foregoing to be true to the best of his knowledge, information, and belief, and to be his free act and deed on behalf of the United States of America.

Subscribed to and sworn to before me this 13th day of May, 2005.

Lisa J. Talbot
Notary Public
My Commission Expires: 5/29/09

LISA J. TALBOT
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 29, 2009

**EXHIBIT A**

**AFFIDAVIT OF JAMES PICARDI**

I, James Picardi, being duly sworn, depose and state the following under oath:

05 11015 JLT

1. I am a Task Force Agent ("TFA") with the United States Drug Enforcement Administration ("DEA") assigned to the Boston Office, and have served in this capacity since September 2002. I am also a police officer with the Revere Police Department, and have been so since February 1991. I have held the rank of Sergeant since 1996. From 1996 to 2000, my assignment within the Revere Police Department was as a Sergeant in the Drug Control Unit.

2. During my assignment with the DEA, I have participated in multiple wiretap investigations involving the organized domestic and international importation and distribution of kilogram amounts of cocaine and heroin, and multi-hundred pounds of marijuana. These investigations resulted in the arrest and the dismantling of various distribution, transportation, and supply groups. During the course of my career, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities. I have had extensive

1

experience in the investigation of the activities of narcotics traffickers. I have been involved with and participated in the arrests of approximately 500 persons stemming from narcotic based violations of the Controlled Substance Act. As a result of such arrests and investigations, I have appeared and testified in Superior and District Courts of the Commonwealth of Massachusetts, as well as in the United States District Court for the District of Massachusetts. I have participated in numerous narcotics investigations as a case agent and in a subsidiary role. I have debriefed numerous defendants, informants, and witnesses who had personal knowledge about narcotics trafficking activities and the operation of narcotics trafficking organizations. I personally have participated in all aspects of narcotics trafficking investigations, including conducting surveillance, using confidential informants, acting in an undercover capacity, and conducting court-authorized interceptions of wire and electronic communications. The investigations in which I have participated have resulted in the seizure of illegal drugs and/or proceeds of illegal drug activity, as well as numerous arrests and convictions of drug users, sellers, and traffickers of controlled substances.

    3.    I am providing this affidavit in support of a Complaint for Forfeiture <u>In</u> <u>Rem</u> against the following property:

    $12,571.00 in United States currency seized from Nestor Adrian Cardona Suarez on September 29, 2004, in Revere, Massachusetts ("the Defendant Currency").

4. This affidavit is based upon my personal knowledge, as well as information provided to me by officers of the Revere Police Department and the Massachusetts State Police. This affidavit does not contain every detail I and other law enforcement officers have learned during the course of this investigation, but I set forth the following information as probable cause to believe that the Defendant Currency is subject to seizure and forfeiture to the United States pursuant to 21 U.S.C. §§ 881(a)(6) and 881(b), because it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an exchange, and/or moneys, negotiable instruments, or securities used or intended to be used to facilitate such a violation.

### Investigation

5. On September 28, 2004, at approximately 5:00 p.m., Revere Police Officer John Jones responded to a traffic accident on Lee Burbank Highway in Revere, Massachusetts. When he arrived at the scene of the accident, Officer Jones saw that two vehicles had been involved in a head-on collision. One of the vehicles had been operated by Julian Ospina ("Ospina"), and the other car

had been operated by Nestor Adrian Cardona Suarez ("Cardona").

6. Cardona, speaking in English, told Officer Jones that, after turning south onto the ramp of Lee Burbank Highway from Beach Street, he did not want to wait in the traffic he saw ahead. Cardona stated that he stopped his car, made a u-turn, and headed north in the southbound-only lane. Cardona told Officer Jones that he intended to "take a shortcut" by using the northbound- only turn-around lane. While trying to use his shortcut, Cardona struck the vehicle operated by Ospina head-on. Both parties refused medical attention and, due to the damage, Cardona's car was towed.

7. While Officer Jones was assisting Cardona and Ospina in exchanging papers, Cardona handed Officer Jones what Cardona called an "international driver's license", a Massachusetts vehicle registration and what appeared to be a Colombian driver's license. Officer Jones ran a check of the Massachusetts Registry of Motor Vehicles and determined that Cardona did not have a valid Massachusetts driver's license. Because an international driver's license is not a valid in Massachusetts, Officer Jones determined that Cardona was operating without a license.

8. Due to the rain, the location of the accident, and the fact that Cardona's vehicle had been towed, Officer Jones invited Cardona to sit in the rear of the police cruiser while he called a taxi for Cardona and finished the accident paperwork. After

Cardona accepted the invitation, Officer Jones explained that he would have to pat down Cardona to make sure he had no weapons. At that point, Cardona became extremely nervous, and began to incoherently stutter his words. He also put his hands in his pockets, put his head down and swayed from side to side. Becoming nervous himself, Officer Jones told Cardona to relax and began to pat the exterior of Cardona's clothing. While checking Cardona's groin area, Officer Jones felt an abnormally large bulge. Officer Jones asked Cardona what the bulge was, and after approximately ten seconds of stuttering, Cardona stated: "I have a problem with my testicles". Officer Jones again asked Cardona what the bulge was, and after approximately ten seconds of silence Cardona stated that it was money. Cardona then took a black plastic bag from his pants and handed it to Officer Jones. Officer Jones felt the bag and noted that it felt like money but did not open it immediately. Cardona subsequently told Officer Jones that there was money inside the bag. Officer Jones asked Cardona to whom the money belonged, and Cardona stated that it belonged to his friend. Cardona was unable to give Officer Jones his friend's name.

9.   Officer Jones told Cardona that, at this point, he was not under arrest, but that for officer safety, he would be placing Cardona in handcuffs. Officer Jones placed Cardona in the back fo the police cruiser, instructed him of his rights

under <u>Miranda</u> and requested a supervisor at the scene to secure the package and take over the incident.

10. Shortly thereafter, Sergeant Patricia Carey arrived at the scene. After Sergeant Carey and Officer Jones discussed the facts, Sergeant Carey and Officer Jones opened the bag and saw that it contained United States currency. Cardona was arrested and told that he was being charged with driving without a license and driving to endanger. Sergeant Carey took custody of the cash and Officer Jones transported Cardona to the Revere Police station.

11. Although he spoke clearly in English to Officer Jones at the scene of the accident, and appeared to understand Officer Jones when he spoke in English, when he arrived at the Revere Police station for booking, Cardona claimed that he did not understand English. At the station, Sergeant Carey advised Cardona of his rights under <u>Miranda</u> in Spanish, and booked and fingerprinted Cardoza.

12. In addition to the currency wrapped in plastic found in Cardona's groin area, officers conducting an inventory search seized $71.00 in United States currency from Cardona's pants pocket, two cellular telephones, various pieces of paper and several pieces of identification with different social security numbers, dates of birth, and names.

13. At that point, I became involved in the investigation,

along with Massachusetts State Police Trooper Robert Navas, who is fluent in Spanish. Sergeant Carey, Trooper Navas and myself interviewed Cardona, with Trooper Navas acting as a translator. When asked whose money was taken from him, Cardona stated that the money belonged to him, and that there was $12,500.00 in the bag. Cardona further stated it took him approximately one year to save the money, and that he accumulated it at his house. Cardona stated that his sources of income were One Stop Cleaning and Au Bon Pain. Cardona stated to me that he lives in Revere with four friends, whom he identified as "Renaldo", "Carlos Cardona," and "Felipe Suarez". He did not name the fourth friend. Cardona stated that he pays $270.00 per month in cash to his roommate for rent. Cardona could not specify which roommate took the rent money.

14. Cardona stated that he was on his way to Aries Communication in East Boston at the time of his arrest. He further stated that he was going to send the money to his family in Columbia from Aries Communication. Cardona said that he has sent money to Columbia from Aries Communication approximately five times, but never in an amount over $150.00.

15. At the time of his arrest, Cardona had in his possession a piece of paper with names and figures listed in a column. Based on my training and experience, I recognized the notations on the piece of paper as consistent with a drug ledger.

A drug ledger is a method of accounting that drug dealers use to keep track of customers and what they owe. It is commonly used when drugs are supplied on credit and a customer pays off the balance in installments.

16. Cardona was asked to identify the piece of paper described in paragraph 15 above. Cardona replied that it was a list of friends who were paying back money he loaned them. Cardona stated the names written next to the amounts were nicknames. The nicknames were names of friends Cardona loaned money to who were paying him back. Cardona identified the individuals as "Jaime", "Tuaco" a/k/a "Freddy", and "Americano" a/k/a "Christian". Cardona did not know any of their last names, and he did not know their phone numbers or addresses. Cardona did state that "Americano" lived somewhere in East Boston or Revere. Two of the amounts had no names written next to them.

17. Cardona was asked about two cellular phones he had in his possession at the time of his arrest. He responded that only one of them was his, and that the other belonged to a friend. He stated he pays $40 per month for his cellular phone bill.

18. Cardona was asked why he did not keep his money in a bank account, and he stated that he could not get a bank account. However, at the time of his arrest, Cardona was in possession of a Sovereign Bank VISA check card, bearing his name, valid until 2007.

19. At approximately 10:00 p.m. that night, on the second floor of the Revere Police Station, Massachusetts State Police Trooper Gary Mozuch conducted an odor search of the Defendant Currency with K-9 "Jacco". Jacco is a twenty month old German Shepard certified as a Massachusetts State Police Narcotic Detection K-9.

20. While wearing latex gloves, I set up ten manila envelopes and labeled them number one through number ten. Envelopes one through nine were filled with paper and envelope ten was filled with the Defendant Currency. First, all envelopes were scattered around the floor area of an office at the Revere Police Station. A drug collar[1] was placed around the neck of K-9 Jacco and he began an odor search of the entire office, including the ten manila envelopes. K-9 Jacco showed an extreme interest to envelope number ten. Next, envelope number ten was replaced with a new envelope marked number ten and the Defendant Currency was again placed into this envelope. This time, all ten envelopes were scattered in the hallway of the second floor of the Revere Police station. K-9 Jacco again conducted an odor search of all envelopes and once again showed extreme interest to envelope number ten. According to Trooper Mozuch, K-9 Jacco's

---

[1] A "drug collar" is a special collar placed on narcotics detection dogs to alert them to the type of task that is expected of them. In other words, when a "drug collar" is placed around the drug dog's neck, it knows that it is looking for drugs.

reaction to both envelopes containing the Defendant Currency indicated the presence of a narcotic odor on the Defendant Currency.

21. Officers then sealed the Defendant Currency and I transported it to DEA headquarters in Boston. Another DEA task Force Agent brought the Defendant Currency to a bank for counting and conversion into an official bank check. The investigation revealed that the Defendant Currency consisted of:

    a.     $12,500.00 in United States currency, divided into stacks and secured with elastics, contained in the plastic bag seized from Cardona's groin area; and

    b.     $71.00 in United States currency, recovered from Cardona's pants pocket.

## Conclusion

22. Based on the foregoing, I have probable cause to believe that the Defendant Currency represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an exchange, and/or moneys, negotiable instruments, or securities used or intended to be used to facilitate such a violation. I therefore have probable cause to believe that the Defendant Currency is subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. §§ 881(a)(6) and 881(b).

Signed under the pains and penalties of perjury this 13th day of May, 2005.

_____
James Picardi, Task Force Agent
United States Drug Enforcement
Administration

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __U.S. v. $12,751.00 in U.S. Currency__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ___    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   XX    II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

   ___   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

   ___   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

   ___    V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐    NO ☒

   If so, is the u.s.a. or an officer, agent or employee of the u.s. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 usc §2284?

   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the commonwealth of massachusetts ("governmental agencies"), residing in massachusetts reside in the same division? - (See local rule 40.1(d)).

   YES ☒    NO ☐

   A.  If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☒    Central Division ☐    Western Division ☐

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Kristina E. Barclay, AUSA__
ADDRESS __United States Attorney's Office, 1 Courthouse Way, Suite 9200, Boston, MA 02210__
TELEPHONE NO. __(617) 748-3100__

(Cover sheet local.wpd - 09/12/02)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$12,571.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney'S (Firm Name, Address, and Telephone Number)
Kristina E. Barclay, AUSA    (617)748-3100
United States Attorney's Office
1 Courthouse Way, Suite 9200, Boston, MA 02210

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane / 362 Personal Injury – Med. Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability / 365 Personal Injury – Product Liability | [X] 625 Drug Related Seizure of Property 21 USC | | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander / 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | **PROPERTY RIGHTS** | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 640 R.R & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine / PERSONAL PROPERTY | 650 Airline Regs. | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability / 370 Other Fraud | 660 Occupational Safety/Health | 840 Trademark | 810 Selective Service |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / 371 Truth in Lending | 690 Other | **SOCIAL SECURITY** | 850 Securities/Commodities/ Exchange |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 380 Other Personal Property Damage | **LABOR** | 861 HIA (1395ff) | 875 Customer Challenge 12 USC 3410 |
| 190 Other Contract | 360 Other Personal Injury / 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 862 Black Lung (923) | 891 Agricultural Acts |
| 195 Contract Product Liability | | 720 Labor/Mgmt. Relations | 863 DIWC/DIWW (405(g)) | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 730 Labor/Mgmt. Reporting & Disclosure Act | 864 SSID Title XVI | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting / 510 Motions to Vacate Sentence | | 865 RSI (405(g)) | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment / Habeas Corpus: | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations / 530 General | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Torts to Land | 444 Welfare / 535 Death Penalty | 791 Empl. Ret. Inc. Security Act | 871 IRS - Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 440 Other Civil Rights / 540 Mandamus & Other | | | 890 Other Statutory Actions |
| 290 All Other Real Property | / 550 Civil Rights | | | |
| | / 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

[ ] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

The United States seeks to forfeit $12,751.00 in U.S. Currency, pursuant to 21 United States Code; Section 881(a)(6)and (b), for alleged drug violations.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   Yes   No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                                  DOCKET NUMBER

DATE: 05-17-2005
SIGNATURE OF ATTORNEY OF RECORD: Kristina E. Barclay, AUSA

**FOR OFFICE USE ONLY**
RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

This form was electronically produced by Elite Federal Forms, Inc.